IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Wells Fargo Bank, N.A. Trustee Pooling
and Servicing Agreement Dated as of
August 1, 2005 Asset-Backed Pass-
Through Certificates Series 2005 -- WH
Q4.,

    **Plaintiff,**

v.

Marvetta L. Williams-Pittman,

    **Defendant.**

No. 11-cv-5968

**Judge Ronald A. Guzmán**

## MEMORANDUM OPINION AND ORDER

On December 18, 2012 this foreclosure action came on to be heard on plaintiff's motion for a court order approving the report of sale and distribution and possession. On that date, defendant appeared for the first time and indicated that she has been working with Genesis Housing since September and received a letter on Thursday from wells Fargo stating that they were going to try to sell the house. She disputed plaintiff's counsel's assertion that she had been served with process on October 20, 2011. After some questioning, the Court suggested to defendant that she find an attorney and file a motion to quash the service of summons if she believed she had not been properly served. The case was continued to January 17, and eventually to March 6, 2013 for hearing on the expected motion to quash service of summons. On January 16, 2013 the *pro se* defendant filed a document declaring that she is not the person upon whom a summons and complaint were served. The Court considered this filing, in conjunction with the defendant's statements made in open court on the occasion of her initial personal presence in

court, as a motion to quash service of summons. On March 6, 2013 a hearing was held on the defendant's *pro se* motion to quash service of summons. The defendant was sworn and asked questions by the Court and by plaintiff's counsel. Process server, Peter Valente, also testified.

"A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Relational, LLC v. Hodges*, 627 F.3d 668, 672 (7th Cir. 2010) *citing O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir.1993).To make a prima facie showing of valid service, a plaintiff need only produce a return of service identifying the recipient and noting when and where service occurred, thereby providing enough detail so the opposing party knows what evidence he must rebut. Once that happens, the burden shifts to the defendant to rebut the prima facie showing by strong and convincing evidence. *Id.* at 673.

Making allowances for defendant's *pro se* status and taking into consideration all of the information defendant has placed before the Court, the Court finds as follows. Plaintiff's return of service is sufficient to establish a presumption that the defendant was served on October 20, 2011. However, the person described in the return of service is 5'9" tall and defendant is between 5'4" and 5'5" tall. The person described in the Affidavit of Special Process Server weighs between 151 and 175 pounds, whereas defendant weighs approximately 148 pounds. The person described in the return of service has black hair, while defendant has reddish-brown hair. This evidence leads to the conclusion that the person actually served was not the defendant. Based upon this testimony, and having viewed the defendant in open court, the Court finds it

inconceivable that defendant would be mistaken for a person who is 5'9" tall, weighs as much as 175 pounds and has black hair. The defendant is on the shorter, not taller side for a woman and her hair he could not possibly be black. Although she could be mistaken for someone who weighs 151 pounds it is highly unlikely she would be mistaken for someone who weighs 175 pounds. The Court therefore concludes that the service of process was not made upon this defendant.

There are several possible explanations for what occurred here. The first possibility is that there was no service of process on anyone and the Affidavit of Special Process Server is false. The second possibility is that the service of process took place as described in the return of service and the defendant subsequently received the papers from the person so served and has known about the lawsuit since that time. The third possibility is that the service of process was effectuated as described in the return of service and the defendant never received copies of the papers or was otherwise apprised of the existence of this lawsuit. A variation of this third possibility is that although she never received the documents served by the process server, the defendant knew about the existence of the lawsuit by virtue of subsequent notices regarding Court appearances which were mailed to her residence.

At the hearing, defendant represented that because she was often away from home in October 2011 taking care of her sick mother and had friends and family members staying at her home, it is possible that the summons and complaint were actually given to someone who answered the door and was either a family member or a visitor. Plaintiff argues that if

defendant's testimony is true, one would expect that the defendant would have been given the papers and learned of their service sometime soon thereafter. Ms. Williams however, claims that she knew nothing about this lawsuit until she received notice about three months ago "saying that the house had come up for sale." (Tr. 15). Plaintiff argues that defendant's testimony in this regard lacks credibility. It is, plaintiff argues, highly unlikely that if a friend or relative had received court papers she would not have turned them over to the defendant. It is also unlikely that defendant would not have received any of the other notices regarding proceedings in this case until the very last notice for final approval of the sale. Plaintiff, defendant argues, is manipulating the system.

Plaintiff's argument misses the point. Whether defendant is being truthful about when she first learned of this lawsuit is largely inconsequential, because actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over the defendant in the absence of valid service of process. *O'Brien v. R. J. O'Brien & Associates Inc.*, 998 F.2d 1394 (7th Cir. 1993); *Audio Enterprises Inc. v. B. & W. Loudspeakers of America, a Division of Equity Intern, Inc.*, 957 F.2d 406 (7th Cir. 1992); *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir.1991). Only by establishing valid service of summons can plaintiff claim a valid default and judgment in this case. Nor is defendant's testimony the most damaging evidence to the plaintiff's claim of proper service. The claim of proper service is rebutted by the discrepancy between defendant's physical appearance, and the description of the person served as contained in the plaintiff's own return of service. The testimony of the special process server did little to explain the discrepancy between the defendant's actual appearance and the description in the

Affidavit of Special Process Server. As one would expect, when serving 20 to 25 summonses per day the process server could not possibly have an independent recollection of having served this particular defendant some 4 months ago. The best the process server could do was to testify as to his usual routine. He was unable to identify the defendant as the person upon whom he served the papers. Nor could he explain satisfactorily the discrepancies in body size and hair coloring. Indeed, he indicated at one point that had he observed something unusual such as hair coloring, he would have listed that. It is likely, from the Court's own observation, that the defendant's hair color ought to have been an attribute that stood out for anyone attempting to describe her. Thus, the Court finds that the presumption of service has been rebutted.

The only manner in which the service of summons in this case could be deemed to have been proper is if it is found to be substitute service. Illinois law provides:

> (a) Except as otherwise expressly provided, service of summons upon an individual defendant shall be made ... (2) by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, **provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode** ....

735 ILCS 5/2-203 (emphasis added). Unfortunately for plaintiff, the Affidavit of Special Process Server (Ex. 4) does not indicate that a copy of the summons was mailed to the defendant as required by the statute and it is clear from his testimony at the hearing that the special process

server did not initiate such a mailing. Nor would one expect him to, since the process server believed he had established personal service which would not require a follow-up mailing. Thus, the Court finds that service was not proper.

Plaintiff's final argument is that defendant has waived her defense of insufficient process by submitting, apparently through her conduct, to the court's jurisdiction. Other than making this conclusory argument, plaintiff does not point out or indicate in what manner the defendant in this case either submitted to the jurisdiction of the court or led plaintiff to believe that service was adequate and that no such defense would be interposed. As far as the Court can tell, defendant had no contact with the court, with plaintiff or plaintiff's counsel until she appeared in court and declared that she was surprised to find out that her home was being sold. She complained she had not received notice and continues to do so. This does not appear to the Court to constitute a waiver of service of process or a submission to the Court's general jurisdiction.

Defendant's motion to quash service of summons and vacate the default judgment predicated thereon is granted.

Dated: March 12, 2013

**SO ORDERED**        **ENTER:**

_____
**RONALD A. GUZMÁN**
**District Judge**